*Duncan* for the plaintiffs—*Strawbridge* for the defendant.

---

### *DORSEY & AL.* vs. *THEIR CREDITORS.*

A party who endorses a bill for the accommodation of the drawer, is not entitled to receive damages from the latter beyond what he has actually paid

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. The appellant contends there is an error in the tableau of distribution, because he was not placed thereon, for the damages on certain

bills of exchange protested for non-payment, on which he was indorser.

The evidence on record shews the indorsement to have been made for the accommodation of the drawers. The case therefore differs in no important circumstance from that decided last summer in this court, in the suit of *Nolte & Co.* vs. *their Creditors*, except that in this instance the indorsement was made in the state of Pennsylvania. *Ante, p. 9.*

The court of the first instance rejected the claim for damages. Here it has been contended that decision should be reversed and a different one rendered, from that given in the case just cited. *First*, because the statute of Pennsylvania differs from ours—and, *second*, because in that case, the conclusions to which the court came were incorrect, and unsupported by law.

I. We have been unable to discover any material distinction between the legislative provisions of our own, and our sister state on the subject.

The act of this state, declares: "That if *any person* shall draw or indorse *any bill* or bills of exchange upon any person or persons liv-

Eastern Dist.
Feb'ry, 1829.

DORSEY & AL
vs.
THEIR
CREDITORS.
ing out of this state (territory) but within the limits of the United States of America, and the same be returned unpaid with a legal protest, the drawer thereof, and all others concerned in making and endorsing such bill or bills shall pay and discharge," &c. &c.

The Pennsylvania statute provides "That whenever *any* bill of exchange hereafter to be drawn or endorsed within this commonwealth upon any person or persons, or body corporate, of, or in any other state, territory, or place, shall be returned unpaid, with a legal protest, the person or persons to whom the same shall or may be payable shall be entitled to recover and receive of and from," &c. &c.

The terms used appear to us equally comprehensive in each of the enactments:—the language is broad enough in both to cover the case of the appellant, and we are unable to think of a single argument deducible from the literal terms of the law, that does not apply with the same force to the one act, as to the other.

No decision of the courts of Pennsylvania putting a construction on their statute, in a case such as that before us, has been shewn, nor

have our own researches furnished us with any. We are therefore bound to decide the case by those principles of law which would govern us, if the transaction had taken place here, and the statute been passed in Louisiana.

Eastern Dist
*Febr'y* 1829.

DORSEY & AL
*vs.*
THEIR
CREDITORS.

If the decision in the case of Nolte & Co. be correct, it settles the rights of the parties before us. We feel gratified that the zeal of the counsel for the appellant has enabled us to examine again attentively the doctrine there established, and though we are far from thinking the case free from difficulty, we believe the weight of authority, and of reason too, in favor of the principles which guided us in its decision.

Looking beyond the form in which this contract is clothed, and considering it on the evidence adduced, and the admissions made on record, we have presented to us the case of an indorser of a bill of exchange who put his name on it for the accommodation of the previous parties, and to enable them to raise money on it. He has done so without paying damages, and yet requires the parties to whom he lent his name should pay them to him. We

Eastern Dist.
*Feb'ry*, 1829.

DORSEY & AL
*vs.*
THEIR
CREDITORS.
can discover no equity at least in this demand, and if he has such a right it must be derived from positive law.

Were the appellant the holder of a bill of exchange taken in the due course of trade' and negotiated by him, we believe it would not be necessary for him to shew that he had paid the damages, the law merchant considering the liability to pay them sufficient to enable the holder of a bill to recover them from previous parties.

But we considered in the former case that he was not the holder of a bill of exchange in the sense in which that term is used in the law merchant: that though as to all parties who came after him on the bill, the *lex mercatoria* applied in full force, and made him responsible under its rules, yet that as between him and those he engaged to accommodate with the use of his name, the contract was an ordinary one of suretyship.

The correctness of our former decision depends on the accuracy of considering the endorser as surety. To support that view we are aware that it is necessary we should be authorised to look beyond the form in which the

contract is clothed. The propriety of our do-
ing so, did not strike us to be contested in ar-
gument. If it had, the consideration of a sup-
pos d case will at once show the obligation of
the court to do so. Should for example, the
drawer of a bill of exchange have given it
for the accommodation of the payee, and the
latter have taken it up on protest, most cer-
tainly in a suit by him against the person who
had accommodated him, it would be open to
the drawer to show that the bill had been
given for the mere accommodation of the
plaintiff. This case shows further, that in an
action on a bill, a party might be completely
within the letter of the statute giving damages
on bills of exchange; and yet there cannot be
a doubt that the payee for whose accommo-
dation it was given, could not recover them,
nor the principal, for the payment of which, by
the mere inspection of the bill, the drawer
would appear to be responsible.

If then we are correct in concluding that
the court are not bound by the terms in which
parties on a bill of exchange have cloathed
their contract, and that we may look into the
real nature of the transaction, to ascertain the

Eastern Dist
Feb'ry 1829.

DORSEY & AL
vs.
THEIR
CREDITORS.

extent of their rights and obligations: let us see what contract was formed between the appellant and those for whom he indorsed? It makes a part of the admissions on record as already stated, that he put his name on the bills to enable the previous parties to raise money on them, or in other words, that he made himself responsible to any person they might thereafter pass the bill to. Test this engagement by the definition of our code, which declares suretyship to be "an accessary promise by which a person binds himself for another already bound, and agrees with the creditor to satisfy the obligation of the debtor if he does not," and we are totally at a loss to discover into what other class of contracts the engagement can fall. *La. Code*, 2004.

In opposition to this, it was contended, the indorser could not be considered as surety, because he was liable in the first instance on the bill, to the holder, and that he could not, as sureties can, claim the right of discussion. But we understand it to be an elementary, as it certainly is a familiar doctrine of our law, that the contract of suretyship may exist between the principal and surety, although as

to other parties, they should be bound in *soli-* Eastern Dist
*do.   C. Code,* 428, 7.   *La. Code,* 3014.   *Po-*
*thier traité des obligations, No.* 264.

Febr'y 1829,

DORSEY&AL
*vs.*
THEIR
CREDITORS.

Having thus seen that the contract was one
of *suretyship,* let us next consider whether
that of a *change* was also formed between the
parties.  In making this enquiry we have been
unable to find a single feature of the latter, un-
less in the form of the contract.  The bills in
question never were passed *to* the appellant:
they were not received by him in course of
trade—they were not negotiated *by* him.  He
merely lent his name to enable the previous
parties to put them into circulation.  In no
part of the *lex mercatoria* can we find any
thing which will authorise us to say, that a
person who thus becomes a party to a bill, is en-
titled to the rights of a holder who has taken
and negotiated it for the purposes for which
this contract was first introduced among men,
and subsequently recognized and sanctioned
by law.  It cannot be contended that the form
of the contract is to control the substance of
it; if it did, the agent to whom a bill was pass-
ed for collection might, with equal success,
urge that the indorser's rights and obligations

Eastern Dist were to be settled by the rules which govern
*Feb'ry* 1829.
            the transfer of bills of exchange, instead of the
Dorsey & al law of mandate.
  *vs.*
THEIR          It is said the authorities in the commercial
CREDITORS.
law do not sustain us in the position assumed.
It is certainly true that the point is no where
expressly decided, and it is equally true, that
there have not been many cases which furnish
analogies on which the court can sustain the
doctrine it believes correct; but those which
come nearest to it in principle, do in our judg-
ment completely support the position assumed.

Bayley, in his treatise on bills, in speak-
ing of the remedy by an accommodation party,
states " if the bankrupt were the person to
whom the instrument is lent, in which case
the endorser *is a mere surety*, he will be en-
titled, under 49th G. 3. on taking up the bill or
note, to stand in place of the holder, if he had
proved under the commission, and to prove
himself if the holder had not. *Bayley on bills*,
296.

Again, on the authority of a case in 4 *Ve-
sey*, the author states, that mere reciprocal
accommodation without any specific exchange
of bills or notes, will not create a debt on

either side. Each party in such case *be-* *comes surety for the other*, and until obliged to pay bills or notes negotiated by the other, acquires no right to sue the other, or in the event of his bankruptcy, to prove under his commission. *Ibid.* 302.

Eastern Dist
*Feb'ry* 1829.

DORSEY & AL
*vs.*
THEIR
CREDITORS.

Eden, in his work on bankruptcy, states "whatever be the situation on the bill of the person lending his name, whether he be acceptor, drawer, or indorser, he is substantially a surety for the person who has received consideration for it, and as such, is entitled to be *indemnified* by the estate of the principal. *Page,* 149.

These authorities we think clearly establish, that in England the party who lends his name is considered as surety; and that his right to recover does not depend on the mere fact of his holding the bill, but his having paid it. If then his right to recover depends on paying, that right must be limited to the sum he has paid. The obligations of the principal, cannot be extended beyond the injury the surety has sustained.

The strongest authority against this opinion is contained in the late commentaries of Chan-

Eastern Dist.
*Feb'ry*, 1829.

DORSEY & AL
*vs.*
THEIR
CREDIITORS.
cellor Kent, in which it is stated " accommo-
dation paper is now governed by the same
rules as other paper.   This is the latest and
best doctrine, both in England and in this
country."   In support of this opinion he cites
5 *Taunton*, 192.   6 *Dows.  Par. cas.* 224.   9
*Sergeant & Rawle*, 229.   6 *Cowen*, 484.

The opinions of this eminent jurist and
judge, are entitled to great respect, and when
found different from our conclusions on a le-
gal question, they well authorise further re-
flection before a decision is pronounced.   In
this instance, however, we do not believe that
learned person had any such case in contem-
plation as that before us.   Immediately before
the sentence quoted, he is treating of the obli-
gations of the acceptor, and in opposition to a
novel doctrine first enounced by Lord Ellen-
borough, some years since, that the acceptor
was not liable to the indorser, he continues to
say, " He is bound though he accepted with-
out consideration, and for the sole accommo-
dation of the drawer; accommodation paper
is now governed by the same rules as other
paper."   It is clear to us that the obligations of
the acceptor to the other parties to the bill,

were alone contemplated by the author. If
he intended to say, that as between the party lending his name, and him to whom the
name was lent, all the rules of mercantile paper apply, the cases quoted do not sustain the opinion to that extent. They all relate to the obligations of acceptors of bills, or makers of notes, to parties to the instrument other than those to whom they lent their names; and upon these principles, and in conformity therewith, the case of *Postlewaite* vs. *Cox* was decided a few days since in this court.

As to the observations which fell from the court in the case of *Harrod* vs. *Lafarge*, they are nothing more than the enunciation of the general principle, and as to all other parties to the bill but the person for whom the accommodation was made, they are correct, and still express the opinion of this court. The case before the court is quite different from that, and our decision now, does not in any respect conflict with it.

But the appellant claims interest on the drafts which were duly protested, and which were not given by the judgment of the district court—this must be altered. It is therefore

Eastern Dist
*Febr'y* 1829.

DORSEY & AL
*vs.*
THEIR
CREDITORS.

ordered, adjudged, and decreed that the judgment of the district court be annulled, avoided and reversed, and that the appellant be placed on the respective tableaux of Morgan, Dorsey & Co. Benjamin Morgan and Greenbury Dorsey, for the sum of $31704 71, with interest, on $10000 from the 22d December 1825, on $10000 from the 6th January 1826, on $10000 from the 21st January 1826, on $1700 71 from the 11th January 1826, to the dates of filing the several bilans by said insolvents, and that the appellees pay the costs in both courts.

*Slidell* for opposing creditor—*Eustis* for syndics.